Filed By The Court
2/28/2026 1:22 PM
U.S. BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>**Jacqueline Ard and Terry F. Nicola,**<br><br>    **Debtor(s)** | ) CASE NO. 9:26-cv-00425-BHH-MHC<br>) BK CASE NO.:25-01384-JD<br>) ADV. PRO. NO.: 25−80061−JD<br>)<br>)<br>) |
| **Jacqueline Ard and Terry F. Nicola,**<br><br>    **Plaintiff(s),**<br><br>  vs.<br><br><br>**The Spa on Port Royal Sound Horizontal Property Regime, et al.,**<br><br><br>    **Defendants.** | ) CHAPTER 7<br>)<br>)<br>)<br>)<br>) **PLAINTIFFS' UNIFIED MASTER**<br>) **REPLY IN SUPPORT OF**<br>) **AMENDED MOTION TO**<br>) **WITHDRAW REFERENCE**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' UNIFIED MASTER REPLY IN SUPPORT OF AMENDED MOTION TO WITHDRAW REFERENCE

Plaintiffs Jacqueline Elizabeth Ard and Terry Frank Nicola ("Plaintiffs" or "Debtors"), pro se, respectfully submit this unified reply to the four oppositions filed by: (1) The Spa on Port Royal Sound defendants, (2) Defendant Lucas S. Fautua, (3) the Beaufort County defendants, and (4) Defendant Scott M. Wild, all opposing Plaintiffs' Motion to Withdraw the Reference of Adversary Proceeding No. 25-80061-jd. [ECF Nos. 3, 4, 5, 6].

The oppositions largely recycle the same arguments: alleged untimeliness; characterization of all claims as "core" automatic-stay issues; reliance on § 362(c)(4) "no stay ever existed" merits defenses; and a judicial-economy theory that the bankruptcy court should first dismiss, making withdrawal "moot." None of these points defeats withdrawal under 28 U.S.C. § 157(d), especially in light of Plaintiffs' Second Amended Adversary Complaint ("SAC"), which (i) segregates core and non-core claims, (ii) focuses on post-petition estate-related conduct and

1

independent federal statutory rights, and (iii) includes an explicit Rule 7008 non-consent and jury-trial demand in the district court.

## Plaintiffs' Litigation Posture Supports Withdrawal

Plaintiffs' conduct aligns with the circumstances under which withdrawal is routinely granted.

**First**, Plaintiffs expressly withheld consent under Rule 7008.

**Second**, Plaintiffs demanded a jury trial and refused consent to a bankruptcy jury.

**Third**, the operative complaint asserts multiple non-bankruptcy federal claims seeking monetary damages.

**Fourth**, the Motion was filed at the pleading stage, before discovery or trial preparation.

These undisputed facts independently and collectively support withdrawal.

## I. Legal Standard: "Cause" Under 28 U.S.C. § 157(d)

Under 28 U.S.C. § 157(d), the district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Courts typically evaluate "cause" by considering: (1) the efficient use of judicial resources, (2) delay and costs to the parties, (3) uniformity of bankruptcy administration, (4) prevention of forum shopping, (5) jury-trial rights, and (6) the impact of Article III constraints, including Stern v. Marshall and progeny. In mixed core/non-core proceedings with explicit non-consent and a jury-trial demand, courts frequently find cause when leaving the matter in bankruptcy court would require a two-step process (proposed findings plus de novo review) and/or eventual transfer for jury trial in any event.

Plaintiffs' Motion falls squarely within this framework: the SAC now presents both core and non-core claims, Plaintiffs have expressly withheld consent, and Plaintiffs demand a jury trial in the district court. Continuing in bankruptcy court would guarantee duplication and risk Article III error, while withdrawal centralizes adjudication in the only court that can conduct a jury trial and enter final judgment on private-rights and non-core claims absent consent.

## II. Timeliness of the Motion

Defendants Spa, Fautua, Beaufort County, and Wild argue that Plaintiffs' Motion is "not timely" because there have been "significant filings" in the bankruptcy court, including pending dismissal motions and a rule-to-show-cause order. That is not the governing standard. Timeliness under § 157(d) turns on whether the motion is brought at a relatively early stage—before trial and before final judgment—not on the sheer number of docket entries or the existence of pending motions.

Here, Plaintiffs moved to withdraw while: (a) dispositive motions are still pending in the adversary proceeding, (b) Plaintiffs' motion for leave to file the SAC is pending, and (c) no trial has been held and no final judgment entered. This is precisely when forum selection should be resolved to avoid a scenario where a non-Article III court issues dispositive rulings on contested claims that then must be revisited by this Court via appeal or de novo review. The fact that the bankruptcy court has scheduled or heard argument on its own Motion to Dismiss and Rule to Show Cause, and that Defendants have filed multiple dismissal motions, underscores the need for Article III oversight; it does not render Plaintiffs' request untimely.

## III. Standing Is a Merits Issue, Not a Bar to Withdrawal

The Spa and County oppositions contend that only the Chapter 7 trustee has standing to prosecute the adversary, relying on Matter of Richman–style authority and the bankruptcy court's own standing comments, and suggest that Plaintiffs' "lack of standing" alone "precludes" withdrawal. That argument conflates the forum-selection question under § 157(d) with merits defenses that must be resolved in the proper forum.

First, Plaintiffs' SAC expressly brings:

- Personal § 362(k) claims, which are debtor-specific and not limited to trustee prosecution;
- Claims for bankruptcy abuse of process, claim allowance/disallowance, lien validity/extent, and accounting accuracy, which protect both the estate and Plaintiffs' interests in proper administration; and
- Non-core federal statutory claims under the FDCPA, Fair Housing Act/ADA, and §§ 505 and 525, for which Plaintiffs seek damages, declaratory relief, and a jury trial.

3

Even if the trustee is the "proper party" to pursue certain estate-wide remedies, that does not erase Plaintiffs' standing to pursue their own statutory rights (including § 362(k)) and non-core federal claims, nor does it permit a non-Article III tribunal to issue final judgments on disputed private-rights and jury-triable claims over Plaintiffs' express non-consent.

Second, standing disputes are merits questions for the court with constitutional authority to enter final judgment, not a threshold bar to withdrawal. Defendants cannot transform their affirmative standing defenses into a veto over Plaintiffs' timely invocation of Article III and jury-trial rights. If anything, the fact that the bankruptcy court has already staked out a view that "only the trustee" may sue favors withdrawal, so that debates over who may assert which claims are resolved once, in the Article III forum that will ultimately review any final disposition of the adversary proceeding.

## IV. Article III, Stern, Jury-Trial Rights, and Rule 7008 Non-Consent

Plaintiffs' SAC now squarely raises Article III and jury-trial constraints: it segregates core and non-core counts, pleads post-petition conduct affecting estate property, and includes an explicit Rule 7008(a) statement that Plaintiffs "do not consent" to the bankruptcy court entering final orders or judgments on any issue, and a jury-trial demand in the district court. The oppositions largely ignore these features or attempt to sidestep them by relabeling everything as a "core" stay dispute.

1. **Mixed core / non-core and Stern**

    The SAC identifies as core, under § 157(b), the counts for willful violation of the automatic stay (§ 362(k)), bankruptcy abuse of process (§ 105(a)), claim allowance/disallowance (§ 502), lien validity and extent (§ 506), and accounting/ledger accuracy, and as non-core/related claims the FDCPA, FHA/ADA, and discriminatory tax-enforcement counts. Even where a claim is statutorily labeled "core," Stern v. Marshall and its progeny hold that bankruptcy courts cannot constitutionally enter final judgment on certain private-rights claims without consent. Here, Plaintiffs' non-core statutory claims and their mixed private-rights claims (including those intertwined with a jury demand) cannot be finally adjudicated by a non-Article III court over Plaintiffs' express objection.

2. **Rule 7008 non-consent and § 157(c)(2)**

The SAC states: "Plaintiffs do not consent to final adjudication by the Bankruptcy Court on any issue" and "expressly elect adjudication by the United States District Court," satisfying Fed. R. Bankr. P. 7008(a) and negating any implied consent. Under 28 U.S.C. § 157(c)(2), absent consent, the bankruptcy court may only submit proposed findings and conclusions on non-core matters, which must then be reviewed de novo by this Court. Proceeding in bankruptcy court would thus guarantee a two-step process—discovery, dispositive motions, proposed findings, and then de novo review here—precisely the kind of duplication that constitutes "cause" for withdrawal.

3. **Jury-trial demand and § 157(e)**

Plaintiffs have demanded a jury trial on all legal claims so triable and have not consented to a jury trial before the bankruptcy court. Under 28 U.S.C. § 157(e), a bankruptcy judge may conduct a jury trial only if specially designated by the district court and "with the express consent of all the parties." The local rule cited by some defendants (designating bankruptcy judges to conduct jury trials) does not override the statutory requirement of express consent, which is absent here. Because any jury trial must occur in this Court, and because Plaintiffs have already invoked their Seventh Amendment rights, withdrawing the reference now avoids wasteful bifurcation between pre-trial proceedings in bankruptcy court and trial in the district court.

4. **Defendants' own Article III and jury objections**

All four oppositions raise or rely on arguments that underscore the inappropriateness of final adjudication by the bankruptcy court, including: challenges to subject-matter jurisdiction; assertions that there was "never a stay"; immunity defenses; and disputes over the propriety of Plaintiffs' jury demand. Having questioned the bankruptcy court's authority and the existence of key bankruptcy-law predicates, Defendants cannot simultaneously insist that the same court retain exclusive control over the adversary proceeding and thereby foreclose timely Article III review. Equity and efficiency favor withdrawal where both sides dispute the bankruptcy court's power and where Plaintiffs have expressly invoked non-consent and jury-trial rights.

## V. Judicial Economy and Duplication

All four oppositions invoke "judicial economy" and "efficiency," arguing that the bankruptcy court is already "familiar with the case," that Plaintiffs have filed many motions, and that the court is poised to rule on pending dismissal motions and a rule-to-show-cause order. But under the procedural configuration created by Plaintiffs' SAC and Rule 7008 non-consent, leaving the adversary in bankruptcy court would create—not avoid—duplication.

Because Plaintiffs have: (a) asserted non-core claims, (b) withheld consent, and (c) demanded a jury trial in the district court, any non-core rulings by the bankruptcy court would be only proposed findings subject to de novo review, and any jury trial would have to be conducted here. At the same time, Defendants are previewing extensive merits issues—standing, § 362(c)(4) "no stay," immunity, abstention, and Rooker-Feldman scope—for resolution in the bankruptcy court first, then again on appeal or de novo review. That is the paradigm of inefficiency.

By contrast, early withdrawal consolidates:

- Disposition of Plaintiffs' federal statutory and constitutional claims;
- Determination of standing and stay-existence disputes;
- Resolution of immunity and abstention defenses; and
- Enforcement of Article III and jury-trial rights

in one Article III forum that can both rule on dispositive motions and, if necessary, conduct a jury trial. Section 157(d) exists to prevent precisely the duplication Defendants propose: having the bankruptcy court decide contested merits and then asking this Court to do the same work again under § 158.

## VI. Defendant-Specific Responses

### A. Spa Defendants (ECF No. 3)

The Spa Defendants argue: (1) that Plaintiffs lack standing because only the Chapter 7 trustee may prosecute the adversary proceeding; (2) that the adversary is purely "core" because it involves automatic-stay, claim-allowance, and lien-extent issues; (3) that the motion to withdraw will be "moot" if the bankruptcy court dismisses the adversary; and (4) that judicial economy favors letting the bankruptcy court decide the pending motions and its own Rule to Show Cause.

As explained above, standing and core/non-core characterization are merits and classification issues for the proper forum, not threshold bars to withdrawal. Plaintiffs' personal § 362(k) claims and non-core FDCPA/FHA/ADA/tax-discrimination claims are not trustee-exclusive, and Plaintiffs have explicitly refused to consent to final adjudication by the bankruptcy court. The Spa Defendants' "mootness" theory is backwards: the whole point of timely withdrawal is to prevent a non-Article III tribunal from entering dispositive rulings on contested claims that then must be reviewed or potentially vacated by this Court. Judicial economy is served by moving the entire dispute—including Spa's defenses—into the forum that will ultimately conduct any jury trial and review any final orders.

## B. Defendant Fautua (ECF No. 4)

Defendant Fautua's opposition repeats three themes: alleged untimeliness; characterization of the adversary as a "core" automatic-stay dispute; and insistence that the bankruptcy court should first decide his merits defenses, particularly his § 362(c)(4)(A)(i) "no stay ever existed" argument, which he asserts will lead to his dismissal and make withdrawal "unnecessary."

Plaintiffs' Motion is timely for the reasons already given: it was filed before trial and before any final judgment, at a point when dispositive motions are pending and the SAC has been tendered to cure pleading issues. Fautua's reliance on § 362(c)(4) and prior bankruptcy orders is a merits preview, not a forum-selection argument; whether there was an effective stay at particular times is a contested issue intertwined with Plaintiffs' personal § 362(k) rights and non-bankruptcy claims. Allowing the bankruptcy court to adjudicate those merits while Plaintiffs have invoked Article III and jury-trial rights would only guarantee subsequent review in this Court, which is inefficient and contrary to § 157(d)'s purpose.

## C. Beaufort County Defendants (ECF No. 5)

The Beaufort County defendants join in their co-defendants' arguments and add a section asserting that Plaintiffs' claims against Beaufort County, the Assessor, Treasurer, Clerk Roseneau, and Judge Bonds are "likely to be dismissed" because: (1) Plaintiffs' third case was filed under circumstances in which § 362(c)(4)(A)(i) prevented any automatic stay from going

into effect, so all "stay violations" fail; and (2) if the bankruptcy court so rules, there will be "no action for which withdrawal of the reference would need to be considered."

This is again a merits preview—wrapped around § 362(c)(4)—and not a basis to deny withdrawal. Plaintiffs' SAC includes not only stay-violation and abuse-of-process counts but also claims under §§ 505 and 525 regarding discriminatory tax enforcement, which are non-core/related-to and raise federal statutory and constitutional questions that belong in an Article III court once Plaintiffs have withheld consent and demanded a jury. The County's assertion that "judicial economy" favors keeping the case in bankruptcy court because Plaintiffs have filed multiple motions in that court ignores the duplication that will inevitably result from subsequent de novo review and appeals, and it ignores Plaintiffs' right to have mixed core/non-core and jury-triable claims adjudicated in a constitutionally proper forum.

## D. Defendant Wild (ECF No. 6)

Defendant Wild's opposition is effectively a mirror image of Fautua's brief: he contends that the motion is untimely because of the volume of filings and pending motions; asserts that the adversary is a "core" stay-violation case; argues that Plaintiffs are merely attempting to "dodge" their "third attempt" at pleading; and previews his § 362(c)(4) merits defense, claiming that once the bankruptcy court agrees there was no stay, he will be dismissed and the district court need not consider withdrawal.

As with Fautua, these points do not undercut withdrawal. Plaintiffs' SAC now segregates core and non-core counts, pleads non-bankruptcy federal statutory claims, and makes explicit their Rule 7008 non-consent and jury-trial election. Whether § 362(c)(4) barred any stay and whether Wild's post-petition conduct violated § 362(k), § 105(a), or non-bankruptcy statutes are contested merits questions, not reasons to keep the case in a non-Article III forum over Plaintiffs' objection. Judicial economy is not served by having the bankruptcy court pass on Wild's merits defenses and then requiring this Court to revisit the same issues via appeal or de novo review; it is served by consolidating all of Plaintiffs' claims and all defendants' defenses, including Wild's, in the district court now.

## VII. Conclusion

Plaintiffs have timely invoked their rights under § 157(d), Rule 7008, and § 157(e) after filing a Second Amended Adversary Complaint that clarifies the core/non-core divide, focuses on post-petition and estate-related conduct, and demands a jury trial in the district court.

Defendants' oppositions rely heavily on merits previews (standing, § 362(c)(4), immunity, abstention) and on a judicial-economy theory that would require this Court to revisit, via de novo review or appeal, the same issues they ask the bankruptcy court to decide first. That is exactly the duplication § 157(d) is designed to avoid, particularly in mixed core/non-core cases with express non-consent and a jury-trial demand.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1. GRANT Plaintiffs' Motion to Withdraw the Reference as to Adversary Proceeding No. 25-80061-jd in its entirety;

2. Direct that all further proceedings in that adversary be conducted in this Court, including dispositive motions and any jury trial; and

3. Grant such other and further relief as the Court deems just and proper.

Dated: February 27, 2026

Respectfully submitted,

_____
**Jacqueline E. Ard, Debtor** *Pro Se*
21215 Dartmouth Dr
Southfield, MI 48076
(313) 770-7051
email: jacquelineard72@gmail.com

_____
**Terry F. Nicola, Co-Debtor** *Pro Se*
21215 Dartmouth Dr
Southfield, MI 48076

9

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

**IN RE:**

**Jacqueline Ard and
Terry F. Nicola,**

<strong>Debtor(s)</strong>

**CASE NO.: 25-01384-JD**
**ADV PRO NO: 25-80061**
**SC COURT CASE NO. 2023-CP-07-01818**

# PROOF OF SERVICE
**(Pursuant to 28 U.S.C. § 1746)**

I, **Jacqueline Elizabeth Ard**, declare as follows:

On February 28, 2026, I caused the document(s) identified therein to be served upon all counsel and parties listed, by the method(s) stated (including CM/ECF electronic filing and/or U.S. Mail, and/or Electronic Mail), addressed to the recipients shown.

- **PLAINTIFFS' UNIFIED MASTER REPLY IN SUPPORT OF AMENDED MOTION TO WITHDRAW REFERENCE**

**Parties Served by U.S. Mail and/or Electronic Mail**

**U.S. Trustee's Office**
Strom Thurmond Federal Building
1835 Assembly Street, Suite 953
Columbia, SC 29201
Email: USTPRegion04.CO.ECF@usdoj.gov

**Kevin Campbell, Trustee**
Campbell Law Firm, P.A.
P.O. Box 684
Mount Pleasant, SC 29465
Tel: (843) 884-6874
Email: kcampbell@campbell-law-firm.com

**Michael H. Conrady, Esq.**
Campbell Law Firm, P.A.
890 Johnnie Dodds Blvd / P.O. Box 684
Mount Pleasant, SC 29465-0803
Email: mconrady@campbell-law-firm.com

**Lucas S. Fautua, Esq.**
Smith Debnam Narron Drake Saintsing & Myers, LLP
171 Church Street, Suite 120C
Charleston, SC 29401
Email: lfautua@smithdebnamlaw.com

**J. Ronald Jones, Jr., Esq.**
Smith Debnam Narron Drake Saintsing & Myers, LLP
171 Church Street, Suite 120C
Charleston, SC 29401
Email: rjones@smithdebnamlaw.com

**Christy L. Scott, Fed.I.D.No. 6215**
108 Carn Street,
Walterboro, SC 29488
Email: cscott@lawofficeofchristyscott.com

**David W. Overstreet**
Email: david@earhartoverstreet.com

**Andrew S. Platte**
Email: andrew.platte@earhartoverstreet.com

**Maxwell J. Seferian**
Email:max.seferian@earhartoverstreet.com

**John L. McCants**
Smith Debnam Narron Drake Saintsing & Myers, LLP
171 Church Street, Suite 120C
Charleston, SC 29401
Email: jmccants@brblegal.com

**IMC Resort Services, Inc.**
2 Corpus Christi, Suite 302
Hilton Head Island, SC 29928

**Christine M. Phillips**
108 Burnt Church Road
Bluffton, SC 29910

**Mark Benson**
22 Wells East Dr.
Hilton Head Island, SC 29926
Email: mark@IMCHHI.com

**Scott Wild, Esq.**
Law Office of Scott Wild
37 New Orleans Road, Suite F
Hilton Head Island, SC 29928
Email: scott@wildlawfirm.com

**Jannine M. Mutterer, Esq.**
Mutterer Law Firm, LLC
5 Red Cedar Street, Suite 102
Bluffton, SC 29910
Email: jannine@muttererlaw.com

**William B. Mullis**
239 Beach City Road, Apt. 2213
Hilton Head Island, SC 29926

**Henry Sanders**
239 Beach City Road, Apt. 1205
Hilton Head Island, SC 29926

**Keith Baker**
c/o The Spa on Port Royal Sound HOA Office
239 Beach City Road
Hilton Head Island, SC 29926

**Maryanne Stephenson**
HOA Agent, The Spa on Port Royal Sound
239 Beach City Road
Hilton Head Island, SC 29926

**Jerri Ann Roseneau**
Beaufort County Clerk of Court
102 Ribaut Road
Beaufort, SC 29902

**Robert J. Bonds, Esq.**
P.O. Box 2120
Walterboro, SC 29488

**County Defendants**

**Beaufort County Government**
100 Ribaut Road
Beaufort, SC 29902

**Beaufort County Treasurer's Office**
100 Ribaut Road, Suite 165
Beaufort, SC 29902

**Beaufort County Treasurer's Office (Mailing Address)**
P.O. Drawer 487
Beaufort, SC 29901

**Beaufort County Assessor's Office**
100 Ribaut Road, Room 210
County Administration Building
Beaufort, SC 29902

**Beaufort County Assessor's Office (Mailing Address)**
P.O. Drawer 1228
Beaufort, SC 29901

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28 day of February , 2026.

_____
**Jacqueline E. Ard**
239 Beach City Road
Hilton Head Island, SC 29926
Email: jacquelineard72@gmail.com
Telephone: (313)770-7051

13